# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                      Case No. 20-CR-99

CHRISTOPHER JONES,

    Defendant.

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS

On June 23, 2020, a grand jury sitting in the Eastern District of Wisconsin returned a three-count indictment against Christopher Jones charging him with bank robbery and attempted bank robbery, in violation of 18 U.S.C. § 2113(a), and attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). (Docket # 1.) Jones was arraigned on the charges and entered a plea of not guilty. Jury trial before the Honorable Pamela Pepper will be scheduled after resolution of pretrial motions.

Currently before me is Jones' motion to suppress cell phone records obtained by the Milwaukee Police Department ("MPD") through a search warrant issued by the Milwaukee County Circuit Court. (Docket # 12.) The matter has been fully briefed and is ready for resolution. For the reasons that follow, I recommend that Jones' motion to suppress be denied.

## FACTS

On February 21, 2020, at approximately 11:24 a.m., a subject entered the PNC Bank located at 5216 West Capitol Drive in Milwaukee, approached the teller, and placed a note

and plastic bag on the teller tray, stating, "Put it in the bag." (Gov't Br. in Opp, Ex. 1, Docket # 15-1 at ¶ 5.) The subject placed his hand into his sweatshirt pocket, implying that he had a firearm. (*Id.*) The note had words to the effect of "Put $5,000 in the bag" and the subject kept saying, "Hurry up, bro" and "Hurry the fuck up, bro." (*Id.*) The teller placed cash, which included bait money, on the teller tray next to the bag. (*Id.*) The subject took the money and demanded the note back. (*Id.*) He took the cash, bag, and note and fled the bank. (*Id.*) The witnesses' descriptions and the PNC Bank surveillance video showed that the subject was a black male, 32-35 years of age, 6'2" tall, 230 pounds, with a medium build and medium complexion. (*Id.* ¶ 6.)

On March 6, 2020, at approximately 11:07 a.m., a subject entered the Wells Fargo Bank located at 3323 West Villard Avenue in Milwaukee and went to the teller window. (*Id.* ¶ 7.) The subject pushed a black plastic bag through the teller tray and stated "Give me all the money. I am not playing. I have a gun and will shoot." (*Id.*) The two tellers ducked down behind the counter and security barrier. The subject began yelling that he wanted them to give him money and that he would start shooting. (*Id.*) The subject then robbed a customer in the bank lobby of her wallet after threatening to shoot her and fled the bank. (*Id.*) The note was recovered, which read: "I have a gun!!! Put $5,000 in bag. No die pack or else. XXXXX. I will fucking kill." (*Id.*) The subject did not obtain any funds from the bank. (*Id.*) The witnesses' descriptions and the Wells Fargo Bank surveillance video showed that the subject was a black male, mid 20's in age, approximately 6'1"– 6'3" tall, approximately 170 pounds, with a medium build and light complexion. (*Id.* ¶ 8.) The suspect was wearing a wig and a blue sweatshirt with a distinct design on the front. (*Id.*)

Approximately forty minutes later, a man wearing the same clothes and wig as the Wells Fargo robber entered the Community Financial Service Center located at 821 East Capitol Drive in Milwaukee and attempted to rob the business. (*Id.* ¶ 9.) The subject passed a white plastic bag through the teller tray. (*Id.*) The two tellers, who were behind safety glass, ran to safety and activated the alarm. (*Id.*) The subject fled the business without obtaining any funds. (*Id.*) The witnesses' descriptions and the surveillance video showed that the subject was a black male, early 20's in age, approximately 5'10"– 6'0" tall, thin build and medium complexion, wearing a wig and blue sweatshirt. (*Id.* ¶ 10.) A plastic bag was recovered from the Community Financial Service Center and, the next day, a fingerprint on the bag was identified as belonging to Christopher Jones. (*Id.* ¶ 12.) Jones was on federal supervised release for a previous bank robbery conviction. (*Id.*)

On March 8, 2020, MPD officers stopped a vehicle, in which Jones was a passenger, for having an expired registration. (*Id.* ¶¶ 13–14.) A wanted check revealed that Jones was a suspect in the attempted bank robberies of the Wells Fargo Bank and the Community Financial Service Center. (Gov't Br. at 3.) The officers also learned that Jones was on federal supervised release. (*Id.*) Jones was arrested and the officers searched Jones incident to the arrest, seizing his cell phone. (*Id.*)

On March 9, 2020, Detective Jason Enk of the MPD dialed 911 from the lock screen of Jones' cell phone. (Declaration of Jason Enk ("Enk Decl.") ¶ 4, Docket # 15-2.) The phone remained locked the entire time and Detective Enk did not access the phone's contents. (*Id.*) Detective Enk then consulted the log of the local 911 emergency line and identified Jones' cell phone number. (*Id.*) Detective Enk used this information to obtain a search warrant for the subscriber information, account status, call detail records, and cell

3

site location data associated with the cell phone number from January 15, 2020 to March 8, 2020. (*Id.* ¶ 5.) The warrant was issued by a Milwaukee County Circuit Court judge the same day. (*Id.* ¶¶ 5–7.) The officers also interviewed Jones on March 9, 2020, at which time Jones voluntarily disclosed his cell phone number. (Gov't Br., Ex. 4, Docket # 15-4 at 3.) The officers confirmed Jones' cell phone number with several other sources, including his federal probation officer, a person who recently purchased a car from Jones, and a woman with whom Jones was recently staying. (Gov't Br. at 4.)

The warrant was executed on March 10, 2020 and Detective Enk received the warrant return from T-Mobile on or around March 23, 2020. (*Id.* ¶ 8.) The records showed that Jones' cell phone pinged cell towers near both of the March 6 attempted robberies and traveled from the area of the Wells Fargo Bank to the area of the Community Financial Service Center between the times those attempted robberies took place. (*Id.*) The records also showed that on the day of the PNC Bank robbery, Jones' phone was used in the area of the bank in the morning, moved to an area on Milwaukee's northeast side about four miles away from the bank, and remained there until about forty minutes prior to the robbery. (*Id.*) The phone was inactive for the next forty-seven minutes, during which the PNC Bank robbery took place. (*Id.*) Ten minutes after the robbery, the phone was used again, connecting to the tower four miles away on Milwaukee's northeast side. (*Id.*)

Although Detective Enk initially misplaced the signed search warrant affidavit, (Enk Decl. ¶¶ 9–10), he subsequently located the documents during the course of briefing this motion and submitted the documents to the court with a motion for leave to file a sur-reply brief (Docket # 18, Second Declaration of Jason Enk, Docket # 18-2).

4

Case 2:20-cr-00099-PP    Filed 11/24/20    Page 4 of 10    Document 20

ANALYSIS

Jones argues that his cell phone records must be suppressed because Detective Enk's dialing of 911 from the lock screen of his cell phone to learn his cell phone number constituted an unlawful search under *Riley v. California*, 573 U.S. 373 (2014). (Def.'s Br. at 2, Docket # 13.)[1] The government counters that Detective Enk did not search the contents of Jones' phone; thus, his operation of the emergency-dial function on the lock screen of Jones' phone was a reasonable search of an area of the phone in which Jones does not have a legitimate expectation of privacy. (Gov't Br. at 6, Docket # 15.) The government further argues that even if Detective Enk's use of the phone's emergency call feature was an impermissible search, the inevitable discovery exception saves the phone records from suppression. (*Id.* at 9.)

1. *Riley Analysis*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is 'reasonableness.''" *Riley v. California*, 573 U.S. 373, 381–82 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, reasonableness generally requires the obtaining of a judicial warrant. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement. *Riley*, 573 U.S. at 382 (2014). One exception to the warrant requirement is for a search incident to a lawful arrest. *United States v. Jenkins*, 850

---

[1] Jones also argues that his cell phone records must be suppressed because the government has not produced a signed copy of the affidavit filed in support of the warrant request seeking the cell phone records. Given the government's subsequent production of Enk's signed affidavit, this argument is now moot.

F.3d 912, 917 (7th Cir. 2017). This exception permits law enforcement to search the person of a subject under custodial arrest and seize his cell phone. *See United States v. Brixen*, 908 F.3d 276, 282 (7th Cir. 2018) (citing *Riley*, 573 U.S. at 391–92). The Supreme Court held in *Riley*, however, that law enforcement must obtain a warrant to search the contents of the phone. *See Riley*, 573 U.S. at 403 ("Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant.").

The Seventh Circuit has examined the contours of the Fourth Amendment's application to electronic devices and noted that the "searches in *Riley* and its progeny have a common thread—they involve law enforcement officers affirmatively accessing the content within cell phones to gather evidence against arrestees." *Id.* at 281. For example, in *United States v. Gary*, 790 F.3d 704 (7th Cir. 2015), a police officer arrested the defendant following a traffic stop and seized his cell phones. Later that day, a detective picked up the cell phones and started pushing buttons. As a result, he discovered that one of the phones was assigned to a number that the undercover detective had called earlier to order heroin. He also then accessed the phone's call log to verify the phone had received a call from the detective's phone number. The court, applying *Riley*, found that the warrantless search of the cell phone could not be justified as a search incident to arrest and therefore violated the Fourth Amendment absent some other justification for the search. *Id.* at 708; *see also United States v. Jenkins*, 850 F.3d 912, 916 (7th Cir. 2017) (the government conceded that searching through the settings to determine the phone's number and accessing its call log was unconstitutional under *Riley*).

In contrast, in *Brixen*, officers searched the defendant incident to his arrest and seized his cell phone. 908 F.3d at 279. An officer then used his police cell phone to send a Snapchat message to the defendant's known Snapchat name. As the officer held the defendant's phone, a Snapchat notification appeared on the screen. The officer "did not access any content within [defendant's] phone, nor did he manipulate the phone in any way before he obtained a search warrant." *Id.* Considering *Riley* and its progeny, the court determined that the officer's actions did not amount to a search of the defendant's cell phone. *Id.* at 281. The court reasoned that the officer "did not open or otherwise manipulate [defendant's] phone. Nor did he gain access to any of the phone's content or attempt to retrieve any information from within the phone." *Id.* The court found that *Riley* concerned affirmative manipulation of a cell phone in order to retrieve information from within the phone and since the phone's content was not affirmatively accessed by law enforcement officers, no search occurred. *Id.* at 282. Additionally, the court found that once the phone was seized, "the notification projected on the screen was plain to see . . . an individual who allows notifications to appear to those in plain sight does not have a reasonable expectation of privacy." *Id.* The court concluded that it is "clear from *Riley* that law enforcement officers cannot affirmatively access an arrestee's cell phone." *Id.* Thus, the court found that "disabling notifications that automatically appear on the phone would have preserved the message as private." *Id.* In other words, the notifications were left in plain view and therefore accessible to the police.

This plain view principle was also present in *United States v. Lawing,* 703 F.3d 229 (4th Cir. 2012), a Fourth Circuit case discussed in *Brixen*. In *Lawing*, law enforcement officers called the phone number used by their confidential informant to confirm that they

7

had pulled over the correct subject. The *Lawing* court found that the police did not attempt to retrieve any information from within the phone; rather, the officers merely listened to see whether the defendant's phone would ring when a number was dialed. *Brixen*, 908 F.3d at 281–82 (citing *Lawing*, 703 F.3d at 238). The *Brixen* court agreed with the Fourth Circuit's conclusion that an individual who fails to conceal a phone's ring from those in earshot does not have a reasonable expectation of privacy. *Id.* at 282. Thus, much like the Snapchat notification was in plain view, the phone ring was in plain earshot. *Id.*

In this case, unlike in *Brixen* and *Lawing*, Jones' phone number was not in plain view. Instead, Detective Enk had to affirmatively manipulate Jones' phone to access the emergency call feature and call 911. It was from this call that he was able to then obtain records of Jones' cell phone number. Accordingly, Detective Enk's actions are closer to the detective's actions in *Gary*. Although Detective Enk did not go through Jones' phone log, he did have to manipulate or use Jones' phone to access the emergency call feature. I note that this is not a case where law enforcement was using the emergency feature of Jones' phone for its intended purpose—to make an actual emergency call from a locked phone—so that Detective Enk incidentally learned of Jones' phone number. Rather, Detective Enk's sole purpose in accessing the emergency feature in Jones' phone was to track the call to the 911 records. This was an impermissible search of Jones' phone.

2. *Inevitable Discovery*

The discussion above, however, does not end the analysis. The government argues that the inevitable discovery exception saves the phone records from suppression. Under the inevitable discovery doctrine, if the prosecution can establish by a preponderance of the evidence that the challenged evidence ultimately would have been discovered through

8

lawful means without regard to the constitutional error, then the evidence is not subject to suppression. *United States v. Eymann*, 962 F.3d 273, 287–88 (7th Cir. 2020) (citing *United States v. Jones*, 72 F.3d 1324, 1330 (7th Cir. 1995)). "To satisfy this burden the government must demonstrate (1) that 'it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence,' and (2) that it 'would have conducted a lawful search absent the challenged conduct.'" *Id.* at 288 (quoting *United States v. Marrocco*, 578 F.3d 627, 637–38 (7th Cir. 2009)). The doctrine is premised on the idea that law enforcement '"should be placed in no better, but no worse, a position than they would have been had no impropriety occurred."' *Id.* (quoting *Jones*, 72 F.3d at 1330).

The first question is whether the government had an independent, legal justification for conducting the search of the phone that would have led to the discovery of Jones' phone number. Jones was stopped on March 8 for having an expired registration. A wanted check revealed that Jones was a suspect in two attempted bank robberies and that Jones was on federal supervised release. Jones was arrested and searched incident to the arrest, at which time his cell phone was seized. Detective Enk did not dial 911 from Jones' cell phone until the next day, March 9, the same day Jones was interviewed by the MPD and voluntarily disclosed his cell phone number. The officers were also able to confirm Jones' cell phone number from several other sources, including his federal probation officer. Given the information known to the officers at the time of Jones' arrest, the officers had probable cause to obtain a warrant to search Jones' phone. Thus, I am satisfied the government has met its burden of proof as to the first inquiry of inevitable discovery.

Turning to the second inquiry, whether the government would have conducted a lawful search absent the challenged conduct, I find the government has also met its burden of proof as to this issue. The officers interviewed Jones subsequent to his arrest and he voluntarily gave his phone number, which officers verified through three additional sources. Given the fact Jones was a suspect in the two bank robberies and was on federal supervised release for a previous bank robbery, law enforcement would have obtained a warrant for Jones' cell phone, even without the unlawful search of Jones' phone. For these reasons, the inevitable discovery doctrine applies, and I recommend that the motion to suppress be denied.

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that Jones' Motion to Suppress Evidence (Docket # 12) be **DENIED**.

Your attention is directed to General L.R. 72(c), 28 U.S.C. § 636(b)(1)(B) and Federal Rules of Criminal Procedure 59(b), or Federal Rules of Civil Procedure 72(b) if applicable, whereby written objections to any recommendation or order herein, or part thereof, may be filed within fourteen days of the date of service of this recommendation or order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin this 24th day of November, 2020.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge